UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

ALEX BREYTMAN,                                    :

                    Plaintiff,       :       **REPORT AND RECOMMENDATION**
     -against-                                   :       **TO THE HONORABLE**
                                                                                        **RICHARD M. BERMAN**

NEW YORK PUBLIC LIBRARY,           :
INWOOD BRANCH LIBRARY, JOHN              05 Civ. 10453 (RMB) (FM)
DOE, JANE DOE, and MS. RODRIGUEZ, :

                    Defendants.     :

------------------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

I.      Introduction

          Plaintiff Alex Breytman ("Breytman") commenced this pro se action against the New York Public Library ("Library") after Library personnel refused to let him plug his laptop computer into an electrical outlet at the Library's Inwood Branch. The Library has now moved to dismiss Breytman's amended complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim. For the reasons set forth below, this motion should be granted, and the case should be dismissed with prejudice.

II.     Relevant Procedural History

          Breytman submitted his original complaint to the Pro Se Office of this Court on November 29, 2005. (See Docket No. 2). Thereafter, Your Honor held a

premotion conference on May 18, 2006, to consider the Library's request to move to dismiss Breytman's complaint for failure to state a claim. During that conference, Your Honor afforded Breytman an opportunity to file an amended complaint addressing the issues that the Library's counsel had suggested required the dismissal of his complaint. (See May 18, 2006, Tr. at 6). Breytman filed that amended complaint on or about June 6, 2006. (Docket No. 9). The Library then filed its motion to dismiss on June 8, 2006. (Docket Nos. 10-12). On or about June 14, 2006, in opposition to the motion, Breytman filed a series of papers, including a motion to strike the motion to dismiss, a motion in opposition to the motion to dismiss, a motion for a directed verdict, and an answer to the motion to dismiss, but he did not submit a memorandum of law.[1] (See Docket Nos. 14-18, 19).

On June 15, 2006, Your Honor directed that Breytman's papers be treated as his response to the Library's motion to dismiss. (See Docket No. 17). The following day, Your Honor referred this case to me to report and recommend with respect to the Library's motion. (Docket No. 20). I then held a conference on July 12, 2006, to discuss scheduling and Breytman's request to submit a seventy-five page memorandum in opposition to the Library's motion. After hearing from Breytman, I directed that he limit

---

[1] Breytman contends that the Library should not have been allowed to file its motion to dismiss because it was in default, having failed to answer or move in a timely manner after receiving the summons and complaint in the mail on or before February 28, 2006. (See, e.g., Mot. for Direct[ed] Verdict). By order dated July 14, 2006, however, I extended the deadline for the Library to file its motion nunc pro tunc to the date it was served. (See Docket No. 29).

his legal memorandum to the customary twenty-five pages or less.  (See July 12, 2006, Tr. ("J. Tr.") at 16).   I further directed that the Library file any reply memorandum by August 2, 2006.  (See id.; Docket No. 29).

After the Court denied Breytman's motion for reconsideration of the order directing a page limit, (see Docket No. 34), Breytman failed to submit a memorandum of law.  More recently, however, he has submitted a "new amended complaint" dated October 1, 2006.[2]

Breytman also has filed a notice of appeal from several interlocutory decisions in this case.  (See Docket No. 41).[3]  Pursuant to that notice, much of the record in this case was transmitted to the United States Court of Appeals for the Second Circuit on November 3, 2006.  (See Docket No. 42).

III.    Facts[4]

Breytman is a white Jewish male who frequently visited the Inwood Branch of the Library, located at 4790 Broadway, in a largely Hispanic neighborhood.  (See J. Tr.

---

[2] This document purports to name defense counsel as additional defendants, but also appears to be some sort of response to the Library's motion.  Although the document is unfiled, I nevertheless have referred to it at times in this Report and Recommendation.

[3] Although the docket sheet suggests that Breytman is appealing solely from a memorandum endorsement by Your Honor dated June 26, 2006, the Notice of Appeal establishes that the appeal actually involves a series of the Court's interlocutory decisions.

[4] As noted above, Breytman is proceeding pro se.  It also is clear that English is not his native language.  For these reasons, I have culled the facts from all of his submissions, as well as his statements at court conferences, and assume for present purposes that those facts are true.

at 11-12; Am Compl. at 2). On at least forty visits to the Inwood Branch, Breytman was able to plug his laptop computer into an electrical outlet without incident. (J. Tr. at 3).

On July 7, 2005, Breytman again visited the Inwood Branch with his laptop computer. (Am. Compl. at 2). On this occasion, however, "Jane Doe," a black female Library employee, who had been watching Breytman from the moment he came into the branch, told him that he could not plug his laptop into an outlet because, "if something happens to it[, the L]ibrary will be responsible." (Id.). After Breytman asked to speak to a manager, a "John Doe" security guard appeared and "put his hand on" Breytman, who subsequently was forced to leave the branch. (Id. at 12). At some point during this incident, Ms. Rodriguez, the branch manager, also warned Breytman not to return to the branch. (Id.). On his way home, Breytman became so enraged that he threw his "laptop on the floor . . . destroying it completely." (Ans. to Mot. to Dismiss at 4).

Breytman now uses the Library's Fort Washington Branch, located on West 179th Street in upper Manhattan, which is thirty-three blocks from his house. (See New Am. Compl. at 2). It takes Breytman more than four hours to get to that branch since he cannot afford a ride. (Id.).

Breytman contends that the staff at the Inwood Branch, consisting of one Hispanic employee and nine Black employees, treated him disparately because of his race and ethnic background. (Am. Compl. at 1, 2). As proof of this disparate treatment, he notes that a Black customer once came into the Inwood Branch and became loud and abusive, but the manager, Ms. Rodriguez, "did not tell him to leave," and the security

guard did not put his hands on him.  (Id. at 2).  Breytman concedes that he has no evidence of discrimination on the basis of his race and ethnic background apart from the treatment that the Black customer received and the fact that he is white and Jewish and the Library personnel who refused to let him plug in his laptop are not.[5]  (See J. Tr. at 12).  In particular, he has never seen a nonwhite customer being allowed to plug a laptop into an electrical outlet at the Inwood Branch.  (Id. at 10).

IV.     Discussion

    A.     Effect of Notice of Appeal

As noted earlier, Breytman has appealed to the Court of Appeals from several of Your Honor's interlocutory decisions.  (See Not. of Appeal (Docket No. 41)).  The filing of an appeal generally divests a district court of jurisdiction while the appeal is pending. Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982); United States v. Rodgers, 101 F.3d 247, 251 (2d Cir. 1996).  "The divestiture of jurisdiction rule is, however, not a per se rule.  It is a judicially crafted rule rooted in the interest of judicial economy, designed 'to avoid confusion or waste of time resulting from having the same issues before two courts at the same time.'" Rodgers, 101 F.3d at 251 (quoting United States v. Salerno, 868 F.2d 524, 540 (2d Cir. 1989)).  Here, in the absence of any certification by the district court pursuant to 28 U.S.C. § 1292(b), there clearly is no basis

---

[5]     Breytman contends, and for purposes of this motion I assume, that his Jewish heritage establishes his race and ethnic background, but not his religion.  (See, e.g., Ans. to Mot. to Dismiss ¶ 24).

for Breytman's appeal from several interlocutory rulings.  Accordingly, because the appeal is frivolous, this Court can consider the Library's motion to dismiss without awaiting the outcome of the appeal.  See Salerno, 868 F.2d at 540 (district court may proceed with criminal trial despite pendency of interlocutory double jeopardy appeal); Buell v. Mildworm, No. 97 Civ. 8449 (DLC), 1998 WL 63402, at *1 n.4  (S.D.N.Y. Feb. 17, 1998) (order transferring action to another district proper despite appeal because the notice of appeal was unauthorized and conferred upon the Second Circuit "the power to do nothing but dismiss the appeal") (quoting Rodgers); see also Webb v. GAF Corp., 78 F.3d 53, 55 (2d Cir. 1996) (district court has jurisdiction to grant permanent injunction despite defendant's appeal from order granting preliminary injunction).

    B.    Standard of Review

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must accept as true all factual allegations made in the complaint and draw all reasonable inferences in favor of the plaintiff.  See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993); Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999); Bolt Elec., Inc. v. City of New York., 53 F.3d 465, 469 (2d Cir. 1995).  However, "[l]egal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness."  United States v. Bonanno Organized Crime Family of La Cosa Nostra, 879 F.2d 20, 27 (2d Cir. 1989); see also Albany Welfare Rights Org. Day Care Ctr., Inc. v. Schreck, 463 F.2d 620, 623 (2d Cir. 1972) ("Mere conclusory allegations do not provide an adequate basis for the

assertion of a claim"). The court may grant the defendant's motion only when "it appears beyond doubt . . . that the plaintiff can prove no set of facts [in support of his claim] which would entitle him to relief." Secs. Investor Prot. Corp. v. BDO Seidman, LLP, 222 F.3d 63, 68 (2d Cir. 2000) (quoting Jaghory v. N.Y.S. Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997)).

Although the same rules apply to a pro se plaintiff, pro se complaints "are held to less stringent standards than formal pleadings drafted by lawyers, and are to be construed liberally." Oyekoya v. United States, 108 F. Supp. 315, 317 (S.D.N.Y. 1999) (quoting Santiago v. Meinsen, 89 F. Supp. 2d 435, 438 (S.D.N.Y. 2000)); see also Estelle v. Gamble, 429 U.S. 97, 106 (1976) (same); Lerman v. Bd. of Elections in City of N.Y., 232 F.3d 135, 139-40 (2d Cir. 2000) ("Since most pro se plaintiffs lack familiarity with the formalities of pleading requirements, we must construe pro se complaints liberally, applying a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel."). Moreover, because Breytman is a pro se litigant, the Court may rely on both his amended complaint and his motion papers in assessing the legal sufficiency of his claims. See Burgess v. Goord, No. 98 Civ. 2077 (SAS), 1999 WL 33458, at *1 n.1 (S.D.N.Y. Jan. 26, 1999); Gadson v. Goord, No. 96 Civ. 7544 (SS), 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997); Donahue v. United States Dep't of Justice, 751 F. Supp. 45, 49 (S.D.N.Y. 1990). The Court also may consider any other documents that are referenced in his papers or which are properly the subject of judicial notice. See Tarshis v. Riese Org., 211 F.3d 30, 39 (2d Cir. 2000),

abrogated on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002); Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991).

  C. Merits of Breytman's Claims

Breytman's amended complaint may be liberally construed to assert claims under the First and Fourteenth Amendments to the United States Constitution, Titles II and VII of the Civil Rights Act of 1964, and state law. As set forth below, none of these potential claims entitles him to any relief in this forum.

    1. Constitutional Protections

The First Amendment provides that Congress shall pass no laws abridging freedom of speech. U.S. Const. amend. I. "[T]he freedom to speak one's mind is not only an aspect of individual liberty – and thus a good unto itself – but also is essential to the common quest for truth and the vitality of society as a whole." Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485, 503 (1984). For this reason, pursuant to the Fourteenth Amendment, States are also prohibited from infringing the First Amendment rights of their citizens. See, e.g., Edwards v. South Carolina, 372 U.S. 229, 235 (1963) ("It has long been established that these First Amendment freedoms are protected by the Fourteenth Amendment from invasion by the States.").

The Fourteenth Amendment further protects persons against actions by the state which would deny them "equal protection of the laws" or deprive them of "life, liberty, or property, without due process of law." U.S. Const. amend. IV, § 1.

Liberally construed, Breytman's complaint can be read to assert free speech, due process, and equal protection claims under the First and the Fourteenth Amendments to the United States Constitution.  Nevertheless, as a matter of law, each of those claims necessarily must fail unless Breytman is able to establish that the wrongs alleged were the consequence of governmental action.  See, e.g., Rendell-Baker v. Kohn, 457 U.S. 830, 837-38 (1982) ("Fourteenth Amendment, which prohibits the states from denying federal constitutional rights . . . , applies to acts of the states, not to acts of private persons or entities."); Hudgens v. NLRB, 424 U.S. 507, 513 (1976) ("[T]he constitutional guarantee of free speech is a guarantee only against abridgment by government, state or federal."); Friend v. Union Dime Sav. Bank, No. 79 Civ. 5450 (KTD), 1980 WL 227, at *2 (S.D.N.Y. Aug. 18, 1980) ("[T]he First, Fifth and Fourteenth Amendments require governmental action.").

In this case, there is absolutely no indication that any branch of government was involved in the decision not to let Breytman power his computer using an electrical outlet at the Library.  Indeed, it is settled law that the Library is not a governmental institution.  See, e.g., Gilliard v. N.Y. Pub. Library Sys., 597 F. Supp. 1069, 1074-75 (S.D.N.Y. 1984); N.Y. Pub. Library v. N.Y.S. Pub. Employment Relations Bd., 357 N.Y.S.2d 522, 525 (1st Dep't 1974), aff'd, 37 N.Y.2d 752 (1975).  Furthermore, in his papers, Breytman concedes that the Library is a private actor.  (See Mot. to Opp. to Mot. to Dismiss at 6) (describing the Library as "a private organization and not a public

9

corporation"). For these reasons, any claims that Breytman might assert under the First or Fourteenth Amendments would not entitle him to any relief in this Court.

        2.     Title II

Title II of the Civil Rights Act of 1964 provides as follows:

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

42 U.S.C. § 2000a. Pursuant to 42 U.S.C. § 2000a-3, an individual bringing a suit under Title II may not recover damages; rather, injunctive relief and, where applicable, an award of reasonable attorney's fees are the only forms of relief available. See Newman v. Piggie Park Ents., Inc., 390 U.S. 400, 401-02 (1968). Accordingly, in this pro se case, Title II would entitle Breytman only to an award of injunctive relief.

To secure injunctive relief under Title II, Breytman must first establish that he was denied full and equal access to the Library's facilities on the basis of his race, color, religion, or national origin. 42 U.S.C. § 2000a. Here, however, there is nothing about the circumstances of the Library's refusal to allow Breytman to plug his laptop into an electrical outlet to suggest that he was the victim of discrimination on the basis of his race or ethnic origin. Indeed, the explanation that the Library personnel gave for their decision – that the Library might be responsible if something happened to Breytman's laptop – in no way implicates any of Breytman's personal characteristics. Moreover,

Breytman never saw anyone else of any race who was permitted to plug a laptop into an outlet at the Inwood Branch. (J. Tr. at 10). In fact, when I inquired, Breytman explained that, to the best of his knowledge, he was the only person who had attempted to do so. (Id. at 10). Breytman also concedes that he had been permitted to plug in his laptop on numerous prior occasions when Jane Doe was present. (See Mot. to Opp. to Mot. to Dismiss at 3). He also admits that he probably would have been able to use his laptop to access the internet at the Inwood Branch if he had been able to charge his laptop battery before he left his home. (See J. Tr. at 4). Although Breytman speculates that Jane Doe took the steps that she did during his last visit to the Inwood Branch because "the black race is a race of jew haters," (see New Am. Compl. at 5), such conclusory assertions obviously are insufficient to establish a Title II unequal access claim. Moreover, despite having been afforded several opportunities, Breytman has been unable to set forth any additional facts from which discrimination on racial or ethnic grounds might reasonably be inferred.[6]

        As a matter of law, therefore, Breytman has failed to allege any facts which would entitle him to injunctive relief under Title II of the Civil Rights Act of 1964.

---

[6] When Breytman appeared before me on July 12, 2006, I asked him whether there was anything other than the fact that the people who cautioned him not to plug in his laptop were not white and apparently not Jewish that caused him to believe he was the victim of discrimination. (J. Tr. at 12). Breytman responded, "Not that I am aware of." (Id.).

   3. <u>Title VII</u>

Title VII of the Civil Rights Act of 1964 provides, in relevant part, that

> [i]t shall be an unlawful employment practice for an employer – (1) . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a). Before a federal suit can be filed under Title VII, however, an administrative charge must be filed with the federal Equal Employment Opportunity Commission ("EEOC"). <u>See</u> 42 U.S.C. § 2000e-5(e)(1); <u>see also</u> <u>Fitzgerald v. Henderson</u>, 251 F.3d 345, 358-59 (2d Cir. 2001). In states such as New York, which have a fair employment practice law, an employee's complaint must first be filed with the state agency empowered to act against unlawful employment practices. <u>See</u> 42 U.S.C. § 2000e-5(c). The subject matter jurisdiction of the EEOC to investigate a claim and issue a notice of right to sue vests only after the aggrieved party has filed with the state agency and given that agency a chance to resolve the dispute. <u>See</u> <u>id.</u> In addition, the court's jurisdiction to act vests only after the EEOC has issued the plaintiff a right to sue letter. <u>See</u> 42 U.S.C. § 2000e-5(f). A plaintiff's failure to exhaust all of these administrative remedies deprives the courts of subject matter jurisdiction. <u>See</u> <u>Legnani v. Alitalia Linee Aerree Italiane, S.P.A.</u>, 274 F.3d 683, 686 (2d Cir. 2001).

   In his amended complaint, Breytman complains that the staff of the Inwood Branch of the library did not represent the predominantly Hispanic makeup of the

12

neighborhood because it consisted of nine Black employees and only one Hispanic employee. (Am. Compl. at 2). He further observes that it is, in his view, unconstitutional "to hire one group of people at the expense of other minorit[ies] and is discriminatory." (Id.). Nevertheless, Breytman neither was employed by the Library nor sought employment there. He also never filed any complaint with the EEOC or the New York State Division of Human Rights. Accordingly, he is not entitled to any relief under Title VII.[7]

### 4. State Law

Breytman's amended complaint can also be read liberally to assert a state law claim of assault or battery. (See Mot. to Strike Mot. to Dismiss at 5). In addition, in his Motion to Strike the Motion to Dismiss, Breytman suggests that he may have a claim for negligent infliction of emotional distress. (Id. at 7).

A federal court may exercise supplemental jurisdiction over a state law claim when a federal claim vests the court with subject matter jurisdiction and the state and federal claims "derive from a common nucleus of operative fact." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966). A federal court also has the discretion to retain a pendent claim after dismissing a plaintiff's federal claims on the

---

[7] In certain of his papers, Breytman also refers to himself as disabled. (See, e.g., Mot. to Opp. to Mot. to Dismiss at 8 ("Plaintiff is disabled under ADA"); Mot. for Direct[ed] Verdict at 2 ("It is unfair to the plaintiff to this kind of behavior [because] he is disable[d].")). Subsequently, in his New Amended Complaint, Breytman explained that he was not seeking to bring a claim under the Americans with Disabilities Act ("ADA") and had included the reference simply "as a warning." (New Am. Compl. at 5). For this reason, I have not discussed the potential application of the ADA to Breytman in this Report and Recommendation.

merits prior to trial, but it must consider "the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988); 28 U.S.C. § 1367(c)(3).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." Id. at 350 n.7; see also Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y., 464 F.3d 255, 262 (2d Cir. 2006) ("It is well settled that where . . . the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims.").

Breytman has not shown that there is any reason why the Court should depart from the usual rule in this case.  Accordingly, because all of Breytman's potential federal claims are utterly meritless, this case should be dismissed without retaining jurisdiction over any state law claims that Breytman has asserted.

V.   Conclusion

The New York Public Library's motion to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, (Docket No. 10), should be granted, and this case should be dismissed with prejudice.

VI.   Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties shall have ten (10) days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a) and (e).  Any

such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard M. Berman, United States District Judge, and to the chambers of the undersigned, at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b).  Any requests for an extension of time for filing objections must be directed to Judge Berman.  The failure to file these timely objections will result in a waiver of those objections for purposes of appeal.  See Thomas v. Arn, 474 U.S. 140 (1985); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b).

Dated:     New York, New York
           January 23, 2007

                                              _____
                                              FRANK MAAS
                                              United States Magistrate Judge

Copies to:

Hon. Richard M. Berman
United States District Judge

Alex Breytman, Pro Se
11 Fort George Hill Avenue, Apt. 17GA
New York, New York 10040

Jean L. Schmidt, Esq.
Kimmone M. Ottley, Esq.
Brown Raysman Millstein Felder & Steiner LLP
900 Third Avenue
New York, New York 10022